IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION


MICHAEL ANTONIO MURRAY and          *
KAYLEIGH SHAYE, INC., a Florida
Corporation,                        *

          Plaintiffs,               *

vs.                                 *
                                        CASE NO. 3:05-CV-83 (CDL)
THE CITY OF LAVONIA, GEORGIA,       *
Captain BRUCE CARLISLE, and
Chief RANDY WILLIAM SHIRLEY,        *
Individually,
                                    *
          Defendants.
_____ *


O R D E R

     Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 and
1985 based upon Defendants' alleged violations of their
constitutional right to be free from unreasonable search and seizure
under the Fourth Amendment of the United States Constitution.
Defendants respond that Plaintiffs' constitutional rights have not
been violated and therefore, they are entitled to summary judgment.
For the following reasons, Defendants' Motion for Summary Judgment
(Doc. 22) is granted.


BACKGROUND

     The facts construed in the light most favorable to Plaintiffs
are as follows:

Defendant Chief William Shirley began his investigation into the presence of gambling devices in Lavonia, Georgia, because of unsubstantiated citizen complaints of illegal video machines in retail businesses. In response to these complaints, Chief Shirley sent a letter to all retail businesses in Lavonia explaining that any retail business in possession of a "video gambling machine" had ten days to remove the machines from Lavonia. This letter defined a "gambling device" as defined in O.C.G.A. § 16-12-20.[1] The letter also explained that a person who merely possesses such a device is guilty of a misdemeanor.[2] However, the letter failed to mention that there are exceptions to O.C.G.A. § 16-12-20 which exempt machines that are

---

[1] O.C.G.A. § 16-12-20(2) states in relevant part:
"Gambling device" means:
    (A) Any contrivance which for a consideration affords the player an opportunity to obtain money or other thing of value, the award of which is determined by chance even though accompanied by some skill, whether or not the prize is automatically paid by contrivance;
    (B) Any slot machine or any simulation or variation thereof;
    (C) Any matchup or lineup game machine or device, operated for any consideration, in which two or more numerals, symbols, letters, or icons align in a winning combination on one or more lines vertically, horizontally, diagonally, or otherwise, without assistance by the player. Use of skill stops shall not be considered assistance by the player.

[2] O.C.G.A. § 16-12-23 makes it a crime to "knowingly permit[] any real estate, building, room, tent, vehicle, boat, or other property whatsoever owned by him or under his control to be used as a gambling place." A "gambling place" is a place which has as one of its principal uses the playing of gambling devices. O.C.G.A. § 16-12-20(3). Additionally, any person who "knowingly owns . . . or possesses any device which he knows is designed for gambling purposes . . . is guilty of a misdemeanor of a high and aggravated nature" under O.C.G.A. § 16-12-24(a).

designed and manufactured only for bona fide amusement purposes which involves some skill in its operations if it rewards the play exclusively with: (A) Free replays; (B) Merchandise limited to noncash merchandise, prizes, toys, gift certificates, or novelties, each of which has a wholesale value of not more than $5.00 received for a single play of the game or device; [or] (C) Points, tokens, vouchers . . . which may be exchanged for rewards . . . .

O.C.G.A. § 16-12-35(d)(1)(A)-(C). Although a copy of this letter was provided to Café Risque, Plaintiff Michael Antonio Murray, the general manager of Café Risque, was out of town when the letter was delivered. Consequently, Plaintiff Murray never saw the letter.

During the ten day grace period, Café Risque contacted the company that owned its video machines,[3] Discount Amusement, to ensure that the video machines were legal. Café Risque rented the video machines from Discount Amusement. Discount Amusement serviced the machines and retrieved the funds from the video machines. Discount Amusement contacted its attorney and verified that the video machines were legal. Consequently, Café Risque did not remove the video machines during the ten day period.

After Café Risque failed to remove the video machines, Chief Shirley decided to contact an officer he considered to be an expert in the field of gambling devices—Chief Michael Stapleton. Chief

---

[3]The parties refer to the seized property by several different labels, including "Golf Flip" and "Mega Touch" video machines. After the seizure, the Mega Touch machine was returned because it was found not to be a video gambling device. There is a question of fact, however, as to whether the Golf Flip machine is in fact an illegal gambling device. Since the Court is presently in the posture of determining this case on summary judgment, the Court assumes that both games, as contended by Plaintiffs, are exempt machines under O.C.G.A. § 16-12-35. Consequently, the Court refers to the machines generally as "video machines."

Stapleton was a revenue agent with the Georgia Department of Revenue for sixteen years. During his tenure as a revenue agent, Chief Stapleton worked for six months with the Georgia Bureau of Investigation ("GBI"). While with the GBI, Chief Stapleton worked undercover to investigate complaints of gambling devices in certain establishments. Chief Stapleton received training concerning the legality of gambling devices from the Georgia Revenue Department, the Georgia State Attorney General's Office, and from local district attorneys. Chief Shirley asked Chief Stapleton to visit the Café Risque and determine if the video machines were in fact illegal gambling devices.

Chief Stapleton visited the Café Risque in an undercover capacity. While in Café Risque, Chief Stapleton pushed one button on one of the video machines, the Golf Flip machine, to determine the odds of winning on that machine.[4] Chief Stapleton determined from those odds that it was possible to win more than five dollars on one play of the Golf Flip machine, and consequently that the video machine was an illegal gambling device. Additionally, Chief Stapleton assumed that the video machine next to the Golf Flip machine was illegal. Chief Stapleton then reported back to Chief Shirley that there was one machine in Café Risque that was illegal, and that there was another machine in Café Risque that may or may not

---

[4]Benjamin Eskew, a representative of Discount Amusement, explained that there is actually no button to push on the Golf Flip machine which would show the odds. (Eskew Dep. 40:18-25, May 24, 2006.)

4

be illegal.  Chief Stapleton did not explain his methods of investigation to Chief Shirley, but merely stated that there was an illegal gambling device at Café Risque.

In response to this information from Chief Stapleton, Chief Shirley had a conversation with Defendant Captain Bruce Carlisle:

> [Chief Shirley] told [Captain Carlisle] that he had gotten several citizen complaints about the machines, that he had sent in . . . a couple of citizens to look at the machines. They complained about that they were illegal.  He contacted a fellow that he knew who was the chief of police at North Georgia College and State University . . . in Dahlonega, Chief Stapleton.  He said Chief Stapleton used to be—or was retired from the Department of Revenue—the Georgia Department of Revenue and during his tenure with the State of Georgia that's what [Chief Stapleton] did was these gambling type machines and he was considered an expert in the field.  That [Chief Shirley] conferred with Chief Stapleton and [Chief Stapleton had] gone in there and said, in fact, that the machines were of the illegal type as defined by Georgia law.

(Carlisle Dep. 9:5-18, May 23, 2006.)  Based upon the information received from Chief Shirley, Captain Carlisle prepared a search warrant and accompanying affidavit for Café Risque.  Chief Shirley approved the affidavit before Captain Carlisle presented it to the magistrate.

On April 20, 2005, Captain Carlisle went before a magistrate in Franklin County, Georgia, and presented his affidavit which described the contraband as "any gambling devices as defined in O.C.G.A. 16-12-20," and stated the following facts supporting probable cause for the search warrant:

> The Lavonia Police Department received citizen complaints concerning illegal gambling taking place within the business of Café Risque.  An investigation was opened and

> an undercover agent was contacted to enter the business and
> confirm or deny that illegal gambling devices and/or
> gambling are present at the business in question.  The
> undercover agent was able to confirm that illegal gambling
> devices and/or gambling were present in said business.

(Search Warrant Aff. 2.)  Captain Carlisle did not describe the video machines to be seized because he did not have a description of the machines.  (Carlisle Dep. 27:15-20.)  He did, however, testify to the magistrate as to the identity and background of Chief Stapleton. Additionally, Captain Carlisle explained to the magistrate that Chief Shirley had been involved in the investigation, not Captain Carlisle, and that he believed that Chief Stapleton had identified two video machines as being illegal gambling devices.  (Carlisle Dep. 29:20-31:12.)

On the same day, April 20, Captain Carlisle led a police team to Café Risque and executed the search warrant.  While there, the police searched not only the area where the video machines were located, but the entire Café Risque, including the offices.  Plaintiff Murray explained to Captain Carlisle that he did not have the keys to the video machines, that the video machines were not owned by Café Risque, and that if Captain Carlisle wanted to open the video machines, he would have to contact Discount Amusement.  The police then seized the Golf Flip and Mega Touch video machines.  The video machines were opened the next day when a representative from Discount Amusement came to the police station with the keys.  The police seized the cash located in the video machines.

On April 21, 2005, Captain Carlisle presented to the magistrate an arrest warrant and accompanying affidavit for the arrest of Plaintiff Murray. Captain Carlisle knew Plaintiff Murray to be the Café Risque General Manager. Consequently, Captain Carlisle believed Plaintiff Murray to have knowingly been in possession of gambling devices. Before obtaining the arrest warrant, Captain Carlisle spoke to a district attorney in Lavonia to determine whether Plaintiff Murray should be arrested. Captain Carlisle explained that Plaintiff Murray was the general manager and that it was Captain Carlisle's experience that general managers "were responsible for the overall operation of the store . . . that the general manager ran the show." (Carlisle Dep. 18:9-17.) The district attorney told Captain Carlisle that as the general manager, Plaintiff Murray knew or should have known that there were gambling devices in Café Risque. Thus, based on his knowledge of the Café Risque management "hierarchy" and his discussion with a district attorney, Captain Carlisle signed an affidavit and created a warrant for Plaintiff Murray's arrest.

Although in their possession, neither Captain Carlisle nor Chief Shirley examined the video machines (or brought in an expert to examine the machines) to ensure that they were in fact illegal gambling devices before obtaining the arrest warrant for Plaintiff Murray.[5] Additionally, on the affidavit accompanying the arrest

---

[5]When asked if he ever did an investigation to determine whether Plaintiff Murray had the authority to remove the video machines, Chief Shirley stated, "We didn't have to. We charged Mr. Murray, he was the manager and we charged him. Why would we—why would we want to make an

warrant, Captain Carlisle stated that Plaintiff Murray violated O.C.G.A. § 16-12-24 by "willingly and knowingly" possessing two "video poker machines, which [Plaintiff Murray] knew [were] designed for gambling purposes." Plaintiff Murray was arrested on April 21 pursuant to the arrest warrant. He spent the night in the Franklin County jail and was subsequently charged with a felony.

On September 22, 2005, Plaintiffs Murray and Kayleigh Shaye, Inc., the owner of Café Risque, filed this action for violations of the Fourth and Fourteenth Amendments. Plaintiffs claim that both the search and arrest warrants lack probable cause. Additionally, Plaintiffs claim that the search warrant is invalid on its face because the affidavit contains no factual information and the warrant fails to meet the particularity requirement. Plaintiffs have sued the City of Lavonia, Chief Shirley, in his individual capacity, and Captain Carlisle, in his individual capacity. Defendants respond that because Plaintiffs have failed to establish that they suffered a constitutional violation, Chief Shirley and Captain Carlisle are entitled to qualified immunity and the City of Lavonia is entitled to summary judgment.

---

investigation? He's the manager and we charged him." (Shirley Dep. 55:15-21.)

## DISCUSSION

### I.  Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party has the burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  This burden can be met by showing that the non-moving party will be unable to "establish the existence of an element essential to [the non-moving party's] case, and on which [the non-moving party] will bear the burden of proof at trial." *Id.* at 322.

Once the moving party has met its burden, the burden shifts to the non-moving party to show that there *is* a genuine issue of material fact. *Id.* at 324.  A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  There is a genuine issue if the evidence would allow a reasonable jury to find for the non-moving party. *Id.*  In other words, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

## II. Qualified Immunity

Defendants Carlisle and Shirley claim that they are entitled to summary judgment based upon the defense of qualified immunity. "Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002) (internal quotation marks and citations omitted). Qualified immunity allows "government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." *Id.* at 1194. Since this immunity protects government officials from liability and suit, it is necessary to address the issue of qualified immunity first.

To be entitled to qualified immunity, a government official must first establish "that he was acting within his discretionary authority" when the complained of conduct occurred. *Cottone v. Jenne*, 326 F.3d 1352, 1358-59 (11th Cir. 2003) (internal citation omitted). "Once a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is *not* entitled to qualified immunity." *Id.* at 1358 (emphasis added). A plaintiff may demonstrate that a defendant is not entitled to qualified immunity by showing, under plaintiff's version of the facts, (1) that the government official's conduct violated a constitutional right, and (2) that, at the time of

10

the violation, the right was clearly established.  *Ferraro*, 284 F.3d at 1194; *see also Wilson v. Layne*, 526 U.S. 603, 609 (1999).  A constitutional right is clearly established if "it would be clear to a reasonable [government official] that his conduct was unlawful in the situation he confronted."  *Groh v. Ramirez*, 540 U.S. 551, 563 (2004) (quotation marks and citation omitted).  "A reasonable [government official]'s awareness of an abstract right . . . does not equate to knowledge that his conduct infringes the right."  *Jackson v. Sauls*, 206 F.3d 1156, 1165 (11th Cir. 2000).  "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant."  *Id.* (citations and quotation marks omitted).

Here, neither party disputes that Captain Carlisle and Chief Shirley were acting within their discretionary authority at all times relevant to the present action.  Consequently the burden shifts to Plaintiffs to show that Defendants Carlisle and Shirley are not entitled to qualified immunity.

A.   Search Warrant - Alleged Constitutional Violation

The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend IV.  Plaintiffs claim that the search warrant Defendant Carlisle obtained is invalid under the Fourth Amendment's requirements because (1) there was no probable

cause to obtain the warrant, (2) the attached affidavit provided no factual information, and (3) the warrant fails to particularly describe the things to be searched. In evaluating whether the warrant is valid and supported by probable cause, the Court assumes Plaintiffs' version of the facts is accurate.

       *1. Probable Cause*

    Plaintiffs first argue that Captain Carlisle and Chief Shirley lacked probable cause to search the Café Risque for gambling devices. "Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *United States v. Martinelli*, 454 F.3d 1300, 1307 (11th Cir. 2006) (quotation marks and citation omitted). In a qualified immunity case, however, an officer "need not have actual probable cause but only 'arguable probable cause,' i.e., the facts and circumstances must be such that the officer reasonably could have believed that probable cause existed." *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997). Thus, Captain Carlisle and Chief Shirley are entitled to qualified immunity if "a reasonable officer could have believed that probable cause existed" to search Café Risque. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). In this case, the distinction between "actual probable cause" and "arguable probable cause" has no legal significance because the Court finds that Defendants had actual probable cause.

Plaintiffs claim that Captain Carlisle and Chief Shirley lacked probable cause to procure the search warrant for Café Risque and the two video machines on the property. Plaintiffs contend that Chief Shirley and Captain Carlisle lack probable cause because they gave the magistrate mere conclusions, instead of factual allegations, to support the search warrant. Additionally, Plaintiffs argue that the magistrate needed to be informed in more detail as to the trustworthiness of the "concerned citizens" mentioned in the warrant affidavit and Chief Stapleton.

It is true that the reliability of a confidential informant's statements is "highly relevant in determining the value of his report." *Illinois v. Gates*, 462 U.S. 213, 230 (1983). Thus, if a warrant is based upon only the conclusions of a confidential informant that illegal activity is occurring, that warrant likely lacks probable cause without an attached affidavit providing some factual circumstances to corroborate the conclusion and a statement as to the reliability of the informant. Here, however, the warrant is not based upon the statement of a confidential informant. While the affidavit does state that the Lavonia police received complaints from citizens regarding the allegedly illegal behavior, it then goes on to explain that based upon those complaints, the police undertook an investigation. The investigation was performed by an "undercover agent." The affidavit does not identify the undercover agent, but Captain Carlisle testified, and Plaintiffs do not dispute, that he

told the magistrate that the agent was Chief Stapleton. Captain Carlisle also described Chief Stapleton's background and experience to the magistrate. A statement by a police officer to another officer is "presumptively reliable." *United States v. Flynn*, 664 F.2d 1296, 1303-04 (11th Cir. 1982). Consequently, Plaintiffs' attempt to analogize a failure to identify an undercover agent with the failure to identify a confidential informant is without merit.

Furthermore, based upon the totality of the circumstances, a reasonable officer would have believed that there was probable cause to search Café Risque. Chief Shirley specifically sought out an officer he believed to be an expert in the area of video gambling devices. That expert informed Chief Shirley that after his investigation into the video machines at Café Risque, he was of the opinion that there was at least one illegal gambling device in the establishment. Although under Plaintiffs' version of the facts Chief Stapleton's determination was incorrect, it was reasonable for Chief Shirley to rely on the information provided by Chief Stapleton. It was also reasonable for Captain Carlisle to believe Chief Shirley's report of Chief Stapleton's findings. Therefore, the Court finds that the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband (i.e., gambling devices) at Café Risque. Thus actual probable cause existed to search the establishment.

## 2. Sufficiency of Affidavit

Plaintiffs claim that the affidavit attached to the search warrant is insufficient as a matter of law because it "provided no factual information at all." (Pls.' Br. in Resp. to Defs.' Mot. for Summ. J. 6.) Concerning the sufficiency of a warrant affidavit, the "question . . . is whether a reasonably well-trained officer in [the defendant's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley v. Briggs*, 475 U.S. 335, 345 (1986). The affidavit must be "objectively reasonable" in order to avoid the danger of an unlawful search, *Id.*, and "must show that there is a fair probability that contraband or evidence of a crime will be found at the particular place to be searched." *United States v. Jiminez*, 224 F.3d 1243, 1247 (11th Cir. 2000). Thus, the officer must exercise "reasonable professional judgment" in applying for a warrant. *Id.*

As discussed *supra*, the affidavit states (1) that the police department received complaints of illegal gambling, (2) that they began an investigation to determine if the complaints were accurate, (3) that an undercover agent performed an investigation at Café Risque, and (4) that the undercover officer confirmed that there were illegal gambling devices at Café Risque. These facts are sufficient for a reasonably well-trained officer to believe that the affidavit establishes probable cause to search Café Risque, and to show that there is a fair probability that illegal gambling devices will be

found at Café Risque.  The Court therefore finds that the warrant affidavit was sufficient.

### 3. Particularity Requirement

Finally, Plaintiffs claim that the warrant fails to describe the things to be seized.  "The Fourth Amendment requires that the *warrant* particularly describe the things to be seized, not the papers presented to the judicial officers . . . asked to issue the warrant." *Groh*, 540 U.S. at 557 (quotation marks and citation omitted). Consequently, a warrant must state with some particularity the items to be seized during the search.

The search warrant states that at Café Risque there are "certain instruments, [a]rticles, person(s), or things, namely: Any gambling devices as defined in O.C.G.A. 16-12-20."  It is true that "[a] general order to explore and rummage through [an establishment's] belongings is not permitted." *United States v. Cook*, 657 F.2d 730, 733 (11th Cir. 1981).  "The warrant must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized." *Id.*  However, there are some circumstances where "an exact description of the property [is] impossible." *Id.*  Thus, "[a]ssuming probable cause has been shown, the warrant may be sufficient with only a generic description." *Id.*  Such a description is appropriate, however, only when a more specific description of the items is unavailable. *Id.*

16

First, the Court notes that probable cause to search Café Risque has been established here. Second, the Court finds that the language in the warrant is not generic. The warrant specifically states that the items to be seized are "gambling devices *as defined in O.C.G.A. 16-12-20*." Finally, assuming that the language is generic, the Court finds that under the circumstances in this case an exact description of the machines could not reasonably be ascertained. *See, e.g., James v. United States*, 416 F.3d 467, 472-73 (5th Cir. 1969) (finding warrant for "gambling paraphernalia, including but not limited to dice, crap tables, wires, magnets, coils, solenoid switches, records, sales receipts . . ." to be sufficiently particular under the circumstances of that case).[6] Chief Stapleton was conducting an undercover investigation of Café Risque and stated that he did not want to draw too much attention to himself by staying near the video machines for too long. Additionally, Chief Shirley and Captain Carlisle averred that Café Risque would not allow police officers into the establishment without a search warrant. Consequently, neither Chief Shirley nor Captain Carlisle had the names of the machines or any other identifying characteristics to put in the warrant. The Court finds that the warrant was sufficiently

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

particular such that Plaintiffs' Fourth Amendment rights were not violated.

In summary, the Court finds that (1) the search warrant was supported by probable cause, (2) the warrant affidavit provided sufficient facts to support probable cause, and (3) the warrant meets the particularity requirement. Plaintiffs, therefore, have failed to meet their burden to show that Defendants Shirley and Carlisle violated their constitutional rights. Chief Shirley and Captain Carlisle are consequently entitled to qualified immunity for Plaintiffs' claims concerning the search warrant. Accordingly, Defendants' Motion for Summary Judgment is granted as to Plaintiffs' claims against them in their individual capacities arising from the search warrant.

B. Arrest Warrant - Alleged Constitutional Violation

Plaintiffs argue that the arrest warrant for Plaintiff Murray is invalid and violated Plaintiff Murray's Fourth Amendment rights because it lacks probable cause. (Pls.' Br. in Resp. to Defs.' Mot. for Summ. J. 5.) "Indubitably, an arrest without probable cause violates the Fourth Amendment and establishes a cause of action under section 1983." *Lowe v. Aldridge*, 958 F.2d 1565, 1570 (11th Cir. 1992) (citation omitted). Probable cause exists for an arrest if "the facts and the circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of

reasonable caution to believe that an offense has been or is being committed." *Madiwale v. Saviko*, 117 F.3d 1321, 1324 (11th Cir. 1997) (quotation marks and citation omitted).[7] The arrest "must stand upon firmer ground than mere suspicion . . . though the arresting officer need not have in hand evidence which would suffice to convict." *Wong Sun v. United States*, 371 U.S. 471, 479 (1963) (citation omitted); *see also Brown v. State*, 151 Ga. App. 830, 831, 261 S.E.2d 717, 718 (1979) (explaining that probable cause "requires merely a probability less than certainty but more than a mere suspicion or possibility") (citation omitted). Additionally, probable cause "must be measured by the facts of the particular case." *Wong Sun*, 371 U.S. at 479.

In the instant action, Captain Carlisle obtained an arrest warrant for a violation of O.C.G.A. § 16-12-24. Captain Carlisle stated that Plaintiff Murray "willingly and knowingly possessed a certain device . . . which he knew was designed for gambling purposes."[8] This tracks the language of the statute which makes it

---

[7]The Court notes that, as discussed *supra*, for qualified immunity, "[t]he question . . . is whether the police officers had arguable probable cause." *Id.* "Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors." *Scarbrough v. Myles*, 245 F.3d 1299, 1302-03 (11th Cir. 2001). Instead, arguable probable cause for an arrest exists where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed." *Lowe*, 958 F.2d at 1570 (quotation marks and citation omitted). Here, however, the Court finds that there is actual probable cause.

[8]Plaintiffs claim that the omitted section, "to wit: 2 (two) video poker machines," was false information that was recklessly included in the warrant by Captain Carlisle. Consequently, the Court makes its

a crime for a person to "knowingly own . . . or possess[] any device which he knows is designed for gambling purposes." O.C.G.A. § 16-12-24(a). Plaintiffs claim that there was no probable cause because (1) Captain Carlisle knew Plaintiff Murray did not own the machines, (2) Captain Carlisle knew that Plaintiff Murray could not access the money or controls in the machine, and (3) Captain Carlisle's only evidence that Plaintiff Murray possessed the machines was that Plaintiff Murray was the general manager of Café Risque.

Plaintiff Murray did tell Captain Carlisle that he did not own the machines or have access to the money or controls of the machines. Additionally, Captain Carlisle did not attempt to discover who actually owned the machines before obtaining an arrest warrant for Plaintiff Murray. Captain Carlisle also failed to examine the seized machines to guarantee that they were in fact illegal before obtaining Plaintiff Murray's arrest warrant. The statute, however, makes it a crime for a person to *possess* a gambling device. Plaintiff Murray was not charged with owning either video machine. Consequently, Captain Carlisle's failure to determine the true owners of the machines is irrelevant. Additionally, Captain Carlisle had a reasonable belief, based on Chief Shirley and Chief Stapleton's statements, that the video machines were in fact illegal. Finally,

---

determination on probable cause without considering the allegedly false information. *See Madiwale*, 117 F.3d at 1326 (explaining that "when material that is the subject of the alleged falsity or reckless disregard is set to one side, [and] there remains sufficient content in the warrant affidavit to support a finding of probable cause, then the warrant is valid") (internal quotation marks and citation omitted).

Captain Carlisle's belief that Plaintiff Murray was in possession of the video machines and knew that the video machines were designed for gambling purposes because Plaintiff Murray was the general manager of Café Risque is reasonable in light of his understanding that the general managers of Café Risque "run the show" and are "responsible for the day to day operation."[9]  (Carlisle Dep. 18:9-19:3.)  These reasonable conclusions together establish that Captain Carlisle had probable cause to obtain an arrest warrant for Plaintiff Murray.[10]

Therefore, since there is probable cause that Plaintiff Murray was committing the offense of possessing a gambling device, Plaintiffs' Fourth Amendment rights were not violated.  Plaintiffs

---

[9]In Georgia, possession may be either actual or constructive. *Jackson v. State*, -- S.E.2d --, 2007 WL 914305, at *2 (Mar. 28, 2007). "Constructive possession exists where a person though not in actual possession, knowingly has both the power and intention at a given time to exercise dominion or control over a thing." *Id.* (internal quotation marks and citation omitted). "As long as there is slight evidence of access, power, and intention to exercise control or dominion over an instrumentality, the question of fact regarding constructive possession remains within the domain of the trier of fact." *Wright v. State*, 279 Ga. App. 299, 299, 630 S.E.2d 774, 775 (2006). Although a mere finding of contraband "on a premises occupied by a defendant is not sufficient to support a *conviction* if it affirmatively appears from the evidence that persons other than the defendant had equal opportunity to commit the crime," the fact that Plaintiff Murray was the general manager and "responsible for the day to day operation" of Café Risque would certainly lead a person of reasonable caution to conclude that Plaintiff Murray had the power and intention to exercise control over the video machines.

[10]Plaintiffs also argue that the video machines are in fact legal—thus, the arrest of Plaintiff Murray was illegal.  Plaintiffs therefore contend that Captain Carlisle and Chief Shirley are not entitled to qualified immunity.  The Court rejects this argument.  "[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable." *Madiwale*, 117 F.3d at 1324.

have failed to meet their burden of establishing a constitutional violation.  Thus, Defendants Carlisle and Shirley are entitled to qualified immunity for this claim.  Defendants' Motion for Summary Judgment as to this claim is hereby granted.

## III.  City of Lavonia

The Court has found that there was no constitutional violation in this case.  Where there is no constitutional harm, a municipality cannot be liable for a departmental regulation that might have authorized a constitutional violation.  *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).  Consequently, the City of Lavonia's Motion for Summary Judgment is granted.


CONCLUSION

For the aforementioned reasons, Defendants' Motion for Summary Judgment (Doc. 22) is granted as to all of Plaintiffs' claims.

IT IS SO ORDERED, this 30th day of March, 2007.


S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE

22